# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| PetroNet LLC, | Civil No. 10-3675 (DWF/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM** |
| Hartford Casualty Insurance Company, | **OPINION AND ORDER** |
| Defendant, | |
| and | |
| Hartford Casualty Insurance Company, | |
| Counter-Claimant, | |
| v. | |
| PetroNet LLC, | |
| Counter-Defendant. | |

_____

Jeanne H. Unger, Esq., Bassford Remele, PA, counsel for Plaintiff and Counter-Defendant.

Charles E. Spevacek, Esq., Katrina M. Giedt, Esq., and Michael P. McNamee, Esq., counsel for Defendant and Counter-Claimant.

_____

## INTRODUCTION

This matter is before the Court on a motion for summary judgment brought by Defendant and Counter-Claimant Hartford Casualty Insurance Company ("Hartford"). For the reasons set forth below, the Court grants Hartford's motion.

## BACKGROUND

In this action for declaratory relief, Plaintiff and Counter-Defendant PetroNet LLC ("PetroNet") seeks a judicial declaration that Hartford has a duty to defend and indemnify PetroNet with respect to an underlying lawsuit, *CHS Inc. v. PetroNet, LLC*, *et al.*, (D. Minn. Civ. No. 10-94 RHK/FLN) (the "CHS Action"). PetroNet is a limited liability company organized under the laws of Minnesota with its principal place of business in Arizona. (Compl. ¶ 1.) Hartford is a corporation organized under the laws of Indiana with its principal place of business in Hartford, Connecticut. (*Id.* ¶ 2.) Hartford is duly licensed to do business as an insurance company in Minnesota and issued a policy of general liability insurance to PetroNet in Minnesota (the "Policy"). (*Id.*)

> The Policy includes the following business liability coverage:
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

(Decl. of Jeanne H. Unger ("Unger Decl.") ¶ 2, Ex. A at 51.) The Policy defines "personal and advertising injury" in pertinent part as follows:

> "Personal and advertising injury" means injury, including consequential

2

"bodily injury", arising out of one or more of the following offenses:

. . .

g.  Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; . . . .

(*Id.* at 71-72.)  The definition of "advertisement" includes:

The Internet, but only that part of a web site that is about goods, products or services for the purposes of inducing the sale of goods, products or services . . . .

(*Id.* at 69.)

The Policy also contains the following language regarding exclusions:

This insurance does not apply to:

a.  Expected Or Intended Injury

   . . .

   (2)  "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

   . . .

p.  Personal And Advertising Injury:

   "Personal and advertising injury":

   . . .

   (4)  Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement"; . . . .

(*Id.* at 53, 57.)

In the CHS Action, filed in January 2010, CHS Inc. ("CHS") asserted claims

3

against PetroNet and Chelsea Consulting, Inc. ("Chelsea").  (CHS Action, Doc. No. 1.)  CHS sells fuel in bulk.  (*Id.* ¶ 7.)  By 2002, CHS had started developing an Internet-based software system, called Refined Fuels Control Room ("Control Room"), to automate the billing process for its fuel sales and to provide up-to-date pricing and accurate real-time inventory and supply data.  (*Id.* ¶¶ 10-11.)  The Control Room software integrates with CHS's JD Edwards EnterpriseOne system ("JD Edwards System"), which is CHS's overarching accounting system.  (*Id.* ¶ 10.)

In about 2003, CHS hired Chelsea to construct the interface between the JD Edwards System and the Control Room software.  (*Id.* ¶ 13.)  Chelsea's President, Caroline Santora, signed three contracts on Chelsea's behalf, each of which contained provisions to protect CHS's confidential and trade secret information.  (*Id.* ¶ 14.)  Santora and another CHS employee, Tareq Mahmood, worked about five days a week for about three years on site at CHS's facilities.  (*Id.* ¶ 16.)  Sometime after the relationship between CHS and Chelsea ended, CHS learned that PetroNet, which was formed by Santora and Mahmood, was offering for sale or license an Internet-based system for the petroleum industry that CHS alleges was strikingly similar to CHS's Control Room software.  (*Id.* ¶ 20; Unger Decl. ¶ 10, Ex. I at 3.)

CHS then filed the CHS Action.  In that action, CHS alleged that PetroNet and Chelsea infringed CHS's copyrights in its Control Room software, its JD Edwards System, and certain flow charts; that Chelsea violated its contractual duties to maintain

the confidentiality of CHS's information; and that Chelsea and PetroNet breached their duty to maintain the secrecy of CHS's confidential and trade secret information.[1] PetroNet tendered the CHS Action to Hartford for defense and indemnity coverage. (Compl. ¶ 11.)  Hartford denied coverage on the grounds that the CHS Action did not contain an allegation of personal and advertising injury.  (*Id.* ¶ 12.)

PetroNet then filed an action in Hennepin County District Court in August 2010, asserting a claim for breach of contract and seeking a judicial declaration that Hartford has a duty to defend and indemnify PetroNet with respect to the CHS Action.  Hartford removed the action to this Court on August 23, 2010.  (Doc. No. 1.)  On September 7, 2010, Hartford answered, denying the claims asserted by PetroNet, and asserted a counterclaim seeking a judicial declaration that Hartford has no coverage under the Policy with respect to the CHS Action.  (Doc. No. 7.)

The Court conducted a hearing on Hartford's motion for summary judgment on July 11, 2011.  Hartford asserts that the breach of contract exclusion excludes coverage; that the expected or intended injury exclusion excludes coverage; that the complaints in the CHS Action do not allege claims for covered personal and advertising injury; and that to the extent the complaints in the CHS Action allege a covered personal and advertising

---

[1] Of the three copyright infringement claims, the initial Complaint contained only the claim related to the Control Room software.  (CHS Action, Doc. No. 1.)  The infringement claims related to the JD Edwards System and the flow charts were added in the First Amended Complaint.  (CHS Action, Doc. No. 57.)

injury, CHS seeks only injunctive relief and not covered damages in connection with those claims.  The Court addresses Hartford's motion below.

## DISCUSSION

### I.      Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Duty to Defend and Indemnify

The interpretation of an insurance policy and its application to the facts of the case, including the existence of a duty to defend or indemnify, are questions of law. *Franklin v. Western Nat. Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn. 1998). The duty to defend, which is distinct from and broader in scope than the duty to indemnify, arises when any part of the claim against the insured is arguably within the policy's scope. *Id.* at 406-07. An insurer seeking to avoid the duty to defend bears the burden of demonstrating that all parts of a cause of action clearly fall outside the scope of coverage. *Id.* at 407.

### A.     Personal and Advertising Injury

Hartford asserts that the complaints in the CHS Action do not allege claims for personal and advertising injury that are covered under the Policy. The Policy provides coverage for injury arising out of infringement of copyright in an advertisement. In order to trigger the advertising-injury coverage, the advertisement must be the direct or proximate cause of the alleged injury. *Polaris Indus., L.P. v. The Cont'l Ins. Co.*, 539 N.W.2d 619, 622 (Minn. 1995). The injury must "be the actual result of the advertising activity, not merely the result of some other activity that happens to be advertised." *Id.*

Hartford asserts that the injuries at issue in the CHS Action were caused by PetroNet's alleged theft and sale of CHS's copyrighted materials and not by any infringement of copyrights that occurred in PetroNet's advertisements. In response, PetroNet asserts that the original Complaint in the CHS Action specifically alleged that the PetroNet website "incorporates CHS's copyrighted materials." PetroNet also asserts

that evidence introduced in the CHS Action, and a review of the PetroNet website, establish that CHS's copyrighted material appears on that website.

The Court has reviewed the complaints in the CHS Action and finds that they cannot be construed to allege an injury arising out of an advertisement. The Court respectfully rejects PetroNet's contention that the request that "Defendants . . . immediately cease and desist from all use, hosting, promotion and/or marketing of its PetroNet Solutions program because said site incorporates CHS's copyrighted material, trade secrets, and/or confidential information" in the initial Complaint's Prayer for Relief is an allegation that the advertising portion of PetroNet's website infringes CHS's copyrights.[2] (*See* CHS Action, Doc. No. 1 at 12.) It is clear from a reading of the Complaint that "said site" refers to the PetroNet Solutions program, which is an Internet-based program that CHS alleges infringes its copyrighted software. Nowhere in either complaint did CHS allege that PetroNet's advertisements infringed CHS's copyrights.

The Court also respectfully rejects PetroNet's argument that the presence of certain numbering code conventions on its website, or the fact that CHS identified those numbering code conventions as evidence of ongoing infringement in the CHS Action,

---

[2] In the First Amended Complaint, this language was modified to request that "Defendants . . . immediately cease and desist from all use, hosting, promotion and/or marketing of its PetroNet Solutions program because it incorporates CHS's copyrighted material, trade secrets, and/or confidential information." (CHS Action, Doc. No. 57 at 14.)

implicate the Policy's advertising-injury coverage. While the presence of a unique numbering code convention on PetroNet's advertising website that was identical to the convention used by CHS may be strong evidence of ongoing infringement of CHS's copyright, the injury to CHS did not arise out of the presence of those numbers in an advertisement. *See Polaris*, 539 N.W.2d at 622 ("That misappropriated information is later advertised does not, by itself, trigger advertising-injury coverage under the policy.").

The Court thus concludes that the complaints in the CHS Action did not allege any injuries that would trigger PetroNet's personal and advertising injury coverage under the Policy.³ To the extent that the complaints or the evidence in the CHS Action indicate that CHS's unique numbering code convention appeared in PetroNet's advertisements, the Court finds as a matter of law that such limited use was not the direct or proximate cause of CHS's alleged injury. Rather, the asserted injury was clearly caused by the alleged misappropriation of CHS's copyrighted material and PetroNet's use of the material to compete with CHS in the marketplace.

### B.   Breach of Contract Exclusion

Hartford asserts that CHS's claims against PetroNet are excluded by the Policy's breach of contract exclusion, which provides that the Policy does not cover personal or advertising injury "[a]rising out of any breach of contract." (Unger Decl. ¶ 2, Ex. A at 57.) Hartford asserts that the catalyst for all of CHS's claims are the allegations that

---

³   Having concluded that the complaints in the CHS Action do not allege a covered personal and advertising injury claim, the Court does not reach Hartford's alternative argument that CHS sought only injunctive relief and not covered damages.

(1) PetroNet's officers promised to hold CHS's proprietary and confidential information in the strictest confidence, and (2) PetroNet's officers breached those promises to create a software program that competes with CHS's Control Room software.

PetroNet asserts that the breach of contract exclusion is not implicated. PetroNet argues that neither of the complaints in the CHS Action include a count for breach of contract, that PetroNet was not a party to the contracts Hartford claims were breached, and that PetroNet could have violated the CHS copyright without any breach of contract.

The Court concludes that, if the CHS Action had involved a covered personal and advertising injury, the breach of contract exclusion would exclude coverage under the Policy. Language in an exclusionary provision of an insurance policy is construed in accordance with the expectations of the insured party and strictly against the insurer. *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 613 (Minn. 2001). Where the language in the policy is unambiguous, however, it must be given its plain and ordinary meaning. *Medica, Inc. v. Atlantic Mut. Ins. Co.*, 566 N.W.2d 74, 77 (Minn. 1997).

Here, the Policy states that it excludes coverage for personal and advertising injury "[a]rising out of any contract."[4] (Unger Decl. ¶ 2, Ex. A at 57.) Although the complaints in the CHS Action do not state any claims labeled "breach of contract," they do allege that "Defendant Chelsea violated its contractual duties to maintain the confidentiality of CHS's information." (CHS Action, Doc. No. 1 ¶ 41; CHS Action, Doc. No. 57 ¶ 55.)

---

[4] The lone exception, "an implied contract to use another's 'advertising idea' in your 'advertisement,'" is inapplicable here.

The asserted injury thus arises out of a breach of contract.

PetroNet's argument that it was not a party to the allegedly breached contract is also of no avail. Even if the Policy language did not broadly state "any contract," the Court would still find that the fact that Chelsea, the party to the allegedly breached contract, and PetroNet, the party to the Policy, are different legal entities does not prevent operation of the exclusion here. The contract with CHS was signed on behalf of Chelsea by Santora, Chelsea's President. It was Santora, Chelsea's President, and Mahmood, Chelsea's Vice President, who CHS alleges were given access to CHS's confidential and trade secret information "[b]ased on Defendant Chelsea's contractual obligation to keep CHS's confidential and trade secret information confidential." (*See* CHS Action, Doc. No. 2 ¶ 13; CHS Action, Doc. No. 57 ¶¶ 14, 16, 55.) Santora and Mahmood then formed PetroNet and began marketing a product that allegedly infringes CHS's copyrights. (Unger Decl. ¶ 10, Ex. I at 3.) Santora and Mahmood, as PetroNet's principals, cannot avoid application of the breach of contract exclusion merely because they were acting as officers of a different legal entity when they allegedly committed the asserted breach.[5]

The Court also respectfully rejects PetroNet's argument that the breach of contract exclusion does not apply because it was theoretically possible for PetroNet to have violated CHS's copyright without any breach of contract. The claims in the CHS Action are plainly based on the theory that Santora and Mahmood breached the contract that

---

[5]   Santora and Mahmood are insureds under the Hartford Policy issued to PetroNet. (*See* Unger Decl. ¶ 2, Ex. A at 59 (defining who is an insured).)

Chelsea entered into with CHS. The alleged injury thus arises out of a breach of contract, and the Court concludes that the Policy's breach of contract exclusion precludes coverage for the claims against PetroNet in the CHS Action.

### C. Expected or Intended Injury

Hartford also asserts that the Policy's expected or intended injury exclusion precludes coverage. That exclusion provides that there is no coverage for personal and advertising injury "arising out of an offense committed . . . with the expectation of inflicting" such injury. (Unger Decl. ¶ 2, Ex. A at 53.) The parties agree that in order for an expected or intended injury exclusion to apply, the insured must have acted with the specific intent to cause injury. Hartford does not argue that PetroNet acted with specific intent to injure CHS, but instead argues that the Court may infer intent as a matter of law.

The Minnesota Supreme Court has stated that "[t]here is no bright line rule as to when a court should infer intent to injure as a matter of law; rather the determination is made through a 'case by case factual inquiry.'" *Am. Family Ins.*, 628 N.W.2d at 613 (quoting *R.W. v. T.F.*, 528 N.W.2d 869, 873 (Minn. 1995)). The Court has already determined that the claims against PetroNet in the CHS Action were not within the scope of coverage for personal and advertising injury under the Policy and that, even if they were, PetroNet would not be entitled to coverage due to the breach of contract exclusion. Given that it is therefore unnecessary to determine whether the expected or intended exclusion also applies, that determining whether the exclusion applies would require a factual inquiry, and that this matter is before the Court on a motion for summary

12

judgment, the Court declines to rule that the expected or intended injury exclusion applies here.

## CONCLUSION

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Hartford's Motion for Summary Judgment (Doc. No. [24]) is **GRANTED**; and

2. PetroNet's Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 21, 2011            s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge